**No. 58156.**—K. Kalustyan Orient Expert Trading Corp. *v.* United States, protest 182800–K (New York).

JOHNSON, Judge:  This case involves the question of proper rate applicable in the classification of 146 chests of olive oil, each chest containing 2 tins.  Olive oil is assessed for duty according to paragraph 53, Tariff Act of 1930, as follows:

PAR. 53.  Oils, vegetable: * * * olive, weighing with the immediate container less than forty pounds, 9½ cents per pound on contents and container; olive, not specially provided for, 6½ cents per pound; * * *

Upon a finding of the Tariff Commission as a result of an investigation with respect to the differences in costs of production of olive oil, the President issued a proclamation, effective July 24, 1931, reducing the duty upon olive oil, weighing with the immediate container less than 40 pounds, from 9½ cents per pound on contents and container to 8 cents per pound on contents and container. (See 60 Treas. Dec. 18, T. D. 44996.)

The olive oil in question was imported in tins of all the same size, but the collector assessed duty upon part of the tins at the rate of 6½ cents per pound and upon the remainder at the rate of 8 cents per pound, on basis of contents and container, for the reason that the official report of weigher showed that the weight was less than 40 pounds. The plaintiff claims that the oil assessed at the higher rate is properly dutiable at the rate of 6½ cents per pound, applicable at the time of withdrawal from warehouse, to olive oil in tins, weighing with the immediate container 40 pounds or more.

At the trial, Kerope Kalustyan, president of the plaintiff corporation, testified that he first saw the shipment of oil at Beard's Erie Basin bonded warehouse, and he found it seriously leaking; that "all the floor was covered with oil"; and that he called in the Inter-American Weighing Co. and had the oil weighed while still in customs custody. He stated that he withdrew it from bonded warehouse in two lots, one in June 1949 and the other in June 1950. When the lots arrived in his place of business, he repacked same in gallon cans in order to salvage the leaking cans, repacking all except seven or eight cases. One of the sound chests was admitted in evidence as exhibit 1, but it was withdrawn at the termination of the trial.

The witness further testified that, out of the 146 chests imported, there were only 6 or 7 chests clean, all the others being "absorbed with olive oil." He also stated that he opened the chest, exhibit 1, weighed the tins, and found that they weighed 40.02 pounds each, and that the empty tins always weigh 2½ pounds.

Counsel for the importer pointed out that the public store's case was returned by the appraiser as containing two 5-gallon cans, each weighing "40/37½" pounds net.

Counsel for the Government offered in evidence a carbon copy of a letter attached to the entry papers, written by the assistant surveyor to the collector, together with a certificate of weights resulting from the weighing at the warehouse by the Inter-American Weighing Co. These two papers were marked in evidence as collective exhibit A.

The assistant surveyor stated that the dock book of weights showed that the merchandise was weighed on the pier upon arrival. The discharging inspector reported the shipment arrived in bad order, 11 tins being empty, 22 slack, and 259 sound. The 22 slack tins were separately weighed, the total gross weight being found as 742 pounds. The weight of the sound tins was based upon a test weight of 30 tins, from which an average gross weight of 39.7958 pounds was found, all weighing under 40 pounds gross.

Upon further investigation of the importer's complaint, a representative of the surveyor weighed two tins at the importer's warehouse, which had been designated by the importer as being in a sound condition. The Government official found that the two tins weighed a gross of 39¾ pounds each.

The certificate of weights returned by the certified weigher, hired by the importer to weigh the merchandise in warehouse, disclosed that the chests were weighed in 28 drafts of 5 and 1 draft of 6. Not one of these draft weights showed an average weight of 40 pounds. They ranged from 34³⁄₁₀ to 39¹⁄₁₀ for the weight of the oil and the tin, the majority averaging 38 and a fraction pounds. This weigher reported only 5 chests, or 10 tins empty, and 6 chests, or 12 cans, leaking.

From the importer's own weigher's report, there is no evidence to base the claim that each of the tins contained a gross of 40 pounds of oil. The report also does not substantiate the importer's testimony that the cans were all leaking,

with the exception of 6 or 7 per centum. It is observed that half of the shipment was withdrawn from warehouse shortly after importation, but the other half was not withdrawn until a year later. If the cans had been in as bad a condition as the importer indicated, it does not seem that he would have left half of the shipment in warehouse a year before withdrawing it. There were no weights taken of such portion remaining in bonded warehouse before the withdrawal thereof.

From a careful consideration of the evidence, the court is unable to discover anything sufficient to establish that duty should be based upon the lower rate of duty. Clearly, the presumption of correctness attaching to the collector's action in assessing duty upon the basis of the weigher's return has not been overcome.

Judgment will, therefore, be entered in favor of the Government.